# CRIMINAL LAW—ELECTIONS—ERROR—EVIDENCE—JURY.

[Cuyahoga (8th) Circuit Court, February 17, 1908.]

Winch, Henry and Marvin, JJ.

## MICHAEL F. RYAN v. STATE.

1. EXPERT EVIDENCE OF CHECK MARKS AS STANDARD OF COMPARISON ADMISSIBLE.
   In a prosecution under Rev. Stat. 7061 (Lan. 10783) against a judge of a primary election for criminally placing a "√" on the duplicate certified list of registered voters of his precinct opposite the names of certain electors not voting, check marks shown to have been made by him opposite the names of those voting may be made a standard of comparison by an expert writing witness to show that those marks opposite those not voting were made by the same person. The court having charged that the marks used as a standard of accused's mark must be established beyond a reasonable doubt, a verdict by the jury finding the defendant guilty will not be disturbed.

2. PROSECUTOR'S REPLY THAT ACCUSED HAD ABSCONDED NOT MISCONDUCT.
   A prosecuting attorney is not guilty of misconduct in his closing argument in a criminal trial, having been specially challenged by counsel for the accused to say why the case against the defendant had not been tried before, by replying that the accused absconded from the county and ran away from the police, if this was the fact.

3. OPPORTUNITY TO READ NEWSPAPERS COMMENTING ON CRIMINAL TRIAL DOES NOT IMPLY MISCONDUCT ON PART OF JURY.
   The fact that a newspaper having a large circulation in the locality of a criminal trial contains large display type comment on the trial, is sold by newsboys on the streets and in the vicinity of the courthouse during the progress of the trial, does not necessarily justify a reviewing court in indulging in the presumption that the objectionable articles were read by any of the jurors trying the case. Misconduct by the jury from opportunity to do so will not be implied.

4. OBJECTION TO JUROR COMES TOO LATE AFTER VERDICT.
   Knowledge of an attorney as to the disqualification of a juror in a criminal trial will be treated as knowledge on the part of the client. Hence, objection to the fact that a juror was not regularly summoned nor his name drawn from the jury box which was known to counsel although forgotten by him comes too late after trial and verdict.

5. OBJECTION TO GRAND JUROR AS PETIT JUROR A GROUND FOR CHALLENGE.
   Objection to a juror in a criminal trial that he was a member of the grand jury returning the indictment upon which accused was tried comes too late after verdict, it being merely a cause for challenge, the failure to do which justifies an assumption by the court of its being waived.

6. GRAND JUROR COMPETENT AS JUROR IN CRIMINAL TRIAL.
   Under Rev. Stat. 7206 (Lan. 10960) requiring the concurrence of twelve of the fifteen grand jurors in finding a true bill, no presumption arises that any one member thereof must have formed an opinion of the guilt or innocence of the accused, precluding a fair and impartial trial by a member of that grand jury, especially where more than a year has elapsed between indictment and trial and the jurors recollection thereof has become wholly indefinite.

Ryan v. State.

7. COURT MAY POLL JURY IN CRIMINAL TRIAL.

The court, under Rev. Stat. 7314 (Lan. 11069) providing for polling the jury, in criminal proceedings, may properly call the names of the jurors, there being no provision in the statute requiring polling to be done by the clerk in criminal matters.

8. FAILURE TO OBJECT TO ALLEGED IRREGULARITY.

Where, from a true transcript of the proceedings of a criminal trial, it appears that but eleven names were called by the court in polling the jury upon its verdict of guilty, and no objection is made that the full number was not called, the verdict will not be set aside on review for such alleged irregularity.

[Proof of this decision and syllabus has been submitted to Judge Marvin and corrected.]

ERROR to Cuyahoga common pleas court.

**Dawley & Meals,** for plaintiff in error.

**S. V. McMahon,** prosecuting attorney, and **W. A. Carey,** assistant prosecuting attorney, for defendant in error:

Cited and commented upon the following authorities: *Blackburn v. State,* 23 Ohio St. 146; *McGill v. State,* 34 Ohio St. 228; *Hayward v. Calhoun,* 2 Ohio St. 164; *Eastman v. Wight,* 4 Ohio St. 156; *Parks v. State,* 4 Ohio St. 234; *Kendrick v. Reppard,* 23 Ohio St. 333; *Watts v. Ruth,* 30 Ohio St. 32; *Beck v. State,* 20 Ohio St. 228; *George v. Surry,* 1 Mood. & Malk. 576; 3 Phillips, Evidence 1323; *State v. Tice,* 30 Ore. 457 [48 Pac. Rep. 367]; *Paisley v. Snipes,* 2 Brev. (S. C.) 200; *Phoenix Nat. Bank v. Taylor,* 113 Ky. 61 [67 S. W. Rep. 27]; *Strong v. Brewer,* 17 Ala. 706; *Thompson v. Davitte,* 59 Ga. 472; *Fogg v. Dennis,* 22 Tenn. (3 Humph.) 47; *Jackson v. Van Dusen,* 5 Johns. 144; *Travers v. Snyder,* 38 Ill. App. 379; 1 Wigmore, Evidence Sec. 693; 6 Enc. of Ev. 427-434; *Bragg v. Colwell,* 19 Ohio St. 407; *Calkins v. State,* 14 Ohio St. 222; *Burdge v. State,* 53 Ohio St. 512 [42 N. E. Rep. 594]; *Myers v. Toscan,* 3 N. H. 47; *State v. Shinborn,* 46 N. H. 497 [88 Am. Dec. 224]; *State v. Hastings,* 53 N. H. 452; *Carter v. Jackson,* 58 N. H. 156; *Wilson v. State,* 2 Ohio St. 319; *Ide v. Churchill,* 14 Ohio St. 372; *Cantwell v. State,* 18 Ohio St. 477; *Pittsburgh, Ft. W. & C. Ry. v. Probst,* 30 Ohio St. 104; *Buck v. Mills,* 8 Dec. Re. 246 (6 Bull. 665); *Meyer v. Shroeder,* 6 Dec. Re. 309 (10 Am. L. Rec. 309); *Cooper v. State,* 16 Ohio St. 328; *Youmans v. Caldwell,* 4 Ohio St. 71; *Mack v. Great Western Dispatch,* 2 Circ. Dec. 22 (3 R. 36); *Meyer v. Cadwalader,* 49 Fed. Rep. 32; *People v. Feld,* 149 Cal. 464 [86 Pac. Rep. 1100]; *People v. McCoy,* 71 Cal. 395 [12 Pac. Rep. 272]; *People v. Stokes,* 103 Cal. 193 [37 Pac. Rep. 207]; *People v. Chin Non,* 146 Cal. 561 [80 Pac. Rep. 681]; *Sheehan v. Hammond,* 2 Cal. App. 371 [84 Pac. Rep. 340]; *People v. Findley,* 132 Cal. 301 [36 Pac. Rep. 472];

*Gay* v. *Torrance*, 145 Cal. 144 [78 Pac. Rep. 540]; *United States* v. *McKee*, 3 Cent. Law Jo. 258; *Mergentheim* v. *State*, 107 Ind. 567 [8 N. E. Rep. 568]; *State* v. *St. Clair*, 16 Nev. 207; *People* v. *Gaffney*, 14 Abb. Pr. (N. S.) 36; *Commonwealth* v. *Haines*, 15 Phila. 363; *Farrer* v. *State*, 2 Ohio St. 54; *Commonwealth* v. *Chauncey*, 2 Ashm. 90; *People* v. *Williams*, 24 Cal. 31; *Roe* v. *Taylor*, 45 Ill. 485; *Carter* v. *State*, 77 Tenn. (9 Lea) 440; *State* v. *Robinson*, 20 W. Va. 713 [43 Am. Rep. 799]; 12 Enc. Pl. & Pr. 552, 561 and foot note 3; *People* v. *Kramer*, 117 Cal. 647 [49 Pac. Rep. 842]; *Eich* v. *Taylor*, 20 Minn. 378; *Boyd* v. *State*, 82 Tenn. (14 Lea) 161; *Johnson* v. *Root*, 2 Cliff. 108 [13 Fed. Cas. 798]; *Gleason* v. *Strauss*, 5 Kan. App. 80 [48 Pac. Rep. 881]; *State* v. *Dumphey*, 4 Minn. 438; *State* v. *Dugan*, 52 Kan. 23 [34 Pac. Rep. 409]; *Commonwealth* v. *White*, 147 Mass. 76 [16 N. E. Rep. 707]; *Commonwealth* v. *White*, 148 Mass. 429 [19 N. E. Rep. 222]; *Manning* v. *Railway*, 187 Mass. 496 [73 N. E. Rep. 645]; *Johnson* v. *State*, 27 Tex. 758; *Wiest* v. *Luyendyk*, 73 Mich. 661 [41 N. W. Rep. 839]; *Commonwealth* v. *Nash*, 135 Mass. 541; *Peacham* v. *Carter*, 21 Vt. 515; *Rineheardt* v. *Potts*, 7 Ired. (N. C.) 403; *State* v. *Godwin*, 5 Ired. (N. C.) 401 [44 Am. Dec. 42]; *Omaha Fair & Exp. Assn.* v. *Railway*, 42 Neb. 105 [60 N. W. Rep. 330]; *Pitts. C. & St. L. Ry.* v. *Porter*, 32 Ohio St. 328; *Devere* v. *State*, 3 Circ. Dec. 249 (5 R. 509); *Austin* v. *State*, 42 Tex. 355; *Kent* v. *State*, 42 Ohio St. 426; *Youle* v. *Brown*, 49 Ill. App. 102; *Marzen* v. *People*, 190 Ill. 81 [60 N. E. Rep. 102]; *State* v. *Murphy*, 13 Wash. 229 [43 Pac. Rep. 44].

## MARVIN, J.

Michael F. Ryan was indicted, tried and convicted under Rev. Stat. 7061 (Lan. 10783), which reads:

"Whoever shall, from the time any ballots are cast or voted until the time has expired for using the same as evidence in any contest of election, wilfully and with fraudulent intent, inscribe, write, or cause to be inscribed or written, in or upon any poll book, tally sheet, or list, lawfully made or kept at any election, in or upon any book or paper purporting to be such, or upon any election returns, or upon any book or paper containing the same, the name of any person not entitled to vote at such election, or not voting thereat, or any fictitious name, or, within the same time, shall wrongfully change, alter, erase, or tamper with any name, word, or figure contained in such poll book, tally sheet, list, book, or paper; or falsify, mark, or write on such poll book, tally sheet, list, book, or paper in any manner whatsoever, such act or acts being done with intent to defeat, hinder, or prevent a fair expression of the will of the people at such election, shall be impris-

oned in the penitentiary not more than three years nor less than one year.''

The charge in the second count of the indictment under which count and no other, the jury returned a verdict of guilty, is that Michael F. Ryan on September 7, 1905, at a primary election of the republican party held in pursuance of the statute, in precinct A of ward 20 in the city of Cleveland, in Cuyahoga county, Ohio, which election was held for the selection of candidates for county and municipal offices to be filled at an election to be held on November 7, 1905, in said city and county; that at this primary election said Michael F. Ryan acted as a judge of election, that he was duly and legally authorized and empowered to so act; that in said city, registration of voters was required by law; that while so acting as such judge, he did then and there unlawfully, and feloniously mark the duplicate certified list of registered electors of said precinct by placing a '' √ '' distinctly in the column under the words ''voted at primaries,'' and in a line with the names of some forty-three electors, which names are given in this count of the indictment, which said names appeared in said duplicate certified list of registered electors. This count of the indictment charges that said persons did not vote at said primary election, that such marking was done with the intent then and there to cause it to appear that the persons, before whose names this mark was made, had voted at said election, there being in the ballot box of said precinct forty-three ballots so marked as to indicate the persons for whom they were cast, in excess of those lawfully cast at said election, this with intent to defeat and hinder a fair expression of the will of the people at such primary election. One Percy A. Secor was jointly indicted with said Ryan, he being charged as having acted as a clerk at said primary, and with doing the same things charged against Ryan.

To this indictment a demurrer was filed by Ryan, which was overruled by the court and this is assigned as error. The indictment is not copied in this opinion, but no reason was given, either in oral argument or in brief of counsel why the indictment was not sufficient, nor has the court, after careful consideration, been able to discover any reason why this demurrer should have been sustained.

It is further alleged that error was committed in the progress of the trial by reason of the overruling of a motion made by counsel for Ryan, that the jury be discharged by reason of the publication of certain articles in regard to the jurors, which articles were published while the trial was in progress, in the Cleveland Press, a daily newspaper, shown to have a very large circulation in the city of Cleveland, where

the trial was being conducted. The attention of counsel for the defendant was called to one of these articles by the trial judge, and it was shown that articles of a similar character to that to which attention was first called were published in at least two different editions of said Press during the progress of the trial. These several articles had headings in very large type, the several letters being at least one inch long and the heading making two lines extending at the top of the page, across six columns of the page and reading:

"Attempt made to bribe jurymen in Ryan case."

Immediately under this there is printed in large type extending across two columns the words "Prosecutor McMahon and Judge Babcock put in possession of the facts and indictments may follow. Gamblers haunt court room where the election fraud case is on trial,—Jurymen called out of bed and offered money to vote a certain way."

Below these words are cuts purporting to be likenesses of three of the jurors, with the name of each. These cuts extend across two columns of the paper printed one above the other and each being the likeness of a man's face, each occupying about two inches perpendicular space, then in large letters the words "Men offered bribes," followed by the names of six of the jurors. Following this is an article stating that one juror was visited at his home Sunday night by a man who said there was money for any juror who would vote right; that another was called out of bed at ten o'clock Monday night and asked if he would consider a proposition to vote a certain way. This article is made up of statements of a similar character and covers a double column space of some ten or twelve inches perpendicular, the same article or practically the same, together with the same pictures was printed in another edition of the same paper on the same day, under the heading: "Drop case is demand," the letters being about an inch and a half in length.

Upon hearing of these publications counsel for the defense filed a motion for the discharge of the jury, based upon the fact of these publications and in support of the motion filed the affidavit of J. P. Dawley, Esq., one of the attorneys for the defendant, in which he alleges the publication of the articles already spoken of in this opinion, annexing as exhibits, copies of the papers containing the publications, that said newspaper has a very wide circulation throughout the city of Cleveland, and in Cuyahoga county and elsewhere; that it is extensively sold by newsboys upon the public streets of the city of Cleveland, and around and in the vicinity of the courthouse where said trial was progressing; that his attention was called to it by the court

who had one of the papers in his possession, and that several were being circulated and commented on in the courtroom where said case was being tried.

The affidavit further states that said paper goes into the homes of those who are serving upon the jury in the court, as well as into the homes generally of the people of Cleveland, that several of the jurymen sitting in the case on trial reside in the city of Cleveland, and are general readers of the daily papers. He further says the case has attracted great and universal interest in the community, and that, in his opinion, these newspaper articles cannot but be prejudicial to the interests of the defendant. No other evidence was introduced for or against the motion.

As has already been said, this motion was overruled, and this action of the court is alleged as error.

That these articles are of such a character as to tend to prejudice whoever should read them, whether juryman or not, against Ryan, does not admit of a doubt, that the headings and pictures were intended to, and would, attract attention to them cannot be doubted. It follows of course that their publication was naturally calculated to interfere with the due administration of justice, because of the danger that they might be read by jurors and their minds be biased thereby. But, in the absence of any evidence that any one of the papers fell into the hands of, and was read by, any juror, other than is contained in the affidavit referred to, we are not prepared to say that the motion to discharge the jury should have been sustained. Our attention has been called to but one case in which it has been held sufficient ground for a new trial, that newspaper publications, calculated to affect the judgment of the jury, were made and circulated about the place of trial during its progress without also directly showing the reading of the same or comment thereon by some juror. *Meyer* v. *Cadwalader,* 49 Fed. Rep. 32. This was a case in the circuit court of the United States, Eastern District of Pennsylvania, in which it was shown only that the objectionable publications were made in leading journals and scattered broadcast throughout the community where the trial was in progress; the court held this to be a sufficient showing that the articles had been read by the jury.

Judge Acheson uses this language in the opinion at page 36: "It is idle to say that there is no direct evidence to show that the jury read these articles. They appeared in the daily issues of leading journals, and were scattered broadcast over the community. The jury separated at the close of each session of the court, and it is incredible

that, going out into the community, they did not see and read these newspaper publications.''

This case is cited in the opinion in the case of *West Chicago St. Ry.* v. *Grenell*, 90 Ill. App. 30. At page 47, the court, after quoting the words hereinbefore quoted from the opinion of Judge Acheson, says, ''But in the present case it is not necessary to resort to the presumption indulged in by the court in the case cited,'' the opinion then going on to show that the newspapers were traced into the hands of jurors and that at least two of the jurors read one of the articles.

Authorities are numerous to the effect that the reading by jurors of newspaper articles prejudicial to one of the parties is ground for new trial, but we do not feel justified in indulging in the presumption which Judge Acheson seems to have indulged, in that the objectionable articles were read by the jurors, or any of them. We feel it our duty rather to presume that the jurors were mindful of their duties and that they did not, in violation of such duties, read the newspaper publications about the case while it was on trial before them. We think it should not be said there was misconduct on their part simply because a popular newspaper gave them the opportunity for misconduct. There was no error, therefore, in overruling this motion.

On the motion for new trial it was shown that certain other publications of the same newspaper were made during the progress of the trial, equally prejudicial to the defendant, and circulated in the same way. We do not find that the action of the court, in overruling the motion for a new trial on this ground was in contravention of any provision of Rev. Stat. 7350 (Lan. 11114), which provides, for what causes a new trial may be granted. The first ground named is for ''Irregularity in the proceedings of the court, jury, prosecuting attorney, or the witnesses for the state, or for any order of the court, or abuse of discretion, by which the defendant was prevented from having a fair trial.'' The second is for ''Misconduct of the jury, or of the prosecuting attorney, or of the witnesses for the state.'' What has already been said applies as well to the action of the court on the motion for new trial on the ground now being considered, as to its action in refusing to discharge the jury on the former motion.

It is further urged that a new trial should have been granted because it was shown, on the motion for new trial, that one M. J. Oviatt, who was one of the jury before whom the case was tried, was not regularly summoned as a juror, nor was his name drawn from the jury box as provided by law. The further fact is shown, too, that one of the attorneys representing the prisoner and who took part in empan-

nelling the jury, had full knowledge of all the facts relating to Oviatt's disqualification. Indeed, this attorney had shortly before the empannelling of the jury, tried a case in the same court where Oviatt sat as a juror, and had made a motion for a new trial on the ground that Oviatt had not been summoned as a juror nor his name been drawn from the box. It is true at the time when this jury was being empannelled the attorney overlooked the fact that he knew of this disqualification of Oviatt, but he states in his affidavit that he really knew all about it, and it was simply a matter of forgetfulness for the moment which prevented his calling attention to it at the time. Knowledge on the part of the attorney is to be treated as knowledge on the part of his client in a matter of this sort. It is only where there is want of knowledge that the court will hear a party complaining of such disqualification. In the case of *McGill* v. *State,* 34 Ohio St. 228, this language is used by the court in its opinion on page 235:

"The rule is clearly settled by the cases cited below, that the disqualification of a juror sitting at the trial of a cause, either civil or criminal, which the exercise of due diligence would have disclosed, is not a sufficient ground for setting aside the verdict and granting a new trial. * * * The party moving for a new trial on such ground must show that he exercised such care and diligence before the juror was sworn, or he will be held to have waived all objections to his competency, which the employment of reasonable diligence would have shown to be well founded."

The court was right in refusing to grant a new trial on this ground.

Another complaint made is that one Colson who was empannelled as a juror in this case, was a member of the grand jury which found the indictment upon which the prisoner was being tried. Colson was examined by the prosecuting attorney as to his qualifications; no question was asked of him by counsel for the prisoner, nor was any question asked of him by anybody as to whether he was a member of the grand jury which found the indictment. He was asked if he had talked with anybody about the case, and he answered, "not for a year." He was asked if he talked with anyone a year ago about it, and he answered, "I presume I did." He was asked if he remembered that conversation, and he said that he didn't. He said that he did not know Mike Ryan, and that he did not know whether the talk which he had concerned the guilt or innocence of Ryan. He was then asked the question: "Do you remember definitely that you did have a conversation about this case a year ago?" To which he answered, "No,

sir. I may have talked about it at that time, but would not say that I did." He was further asked if he had formed or expressed an opinion concerning the case, and he answered, "I have not, no, sir."

As has been said these questions were all asked by the prosecuting attorney. The fact is, that the indictment was found something more than a year before the trial was had, and it is by no means impossible, and perhaps not improbable that the juror had forgotten this particular case. His answers indicated that he had some indefinite recollection about the case, but that it was *wholly* indefinite.

It is urged that since he was a member of the grand jury which returned the indictment he must have at that time formed an opinion as to the guilt or innocence of the prisoner. This is not necessarily so. A grand jury consists of fifteen men, and it is provided by Rev. Stat. 7206 (Lan. 10960), that "At least twelve of the grand jurors must concur in the finding of an indictment,"—so that there may have been at the time this indictment was found, three of the grand jurors who had formed no opinion either way, as to whether there was evidence sufficient to warrant the indictment. For aught that appears Colson may have served upon the grand jury and have been one of three who never made up his mind or formed any judgment as to the guilt or innocence of the party indicted. The statute makes the fact that one was a member of the grand jury which found the indictment, a ground of challenge of such person as a juror upon the trial, but where no challenge is made and no question on this subject is put upon the examination of the juror touching his qualifications, it is too late to raise this objection, after the trial and verdict. In the case of *Beck* v. *State*, 20 Ohio St. 228, it is said in the opinion at page 230:

"The objection taken, after trial, to the juror * * * is thus declared by statute to be a ground of challenge only, and as such it may be waived. The court below was justified in regarding the failure to interrogate the juror, or to make inquiry into the subject-matter of this cause for challenge, before the jury was sworn, as a waiver of the same."

We find no error then in the action of the court in this regard.

Another complaint made is that there was irregularity in the manner in which the verdict was received by the court. The facts in this regard are, as appears from the affidavit of Gertrude Kelley, a stenographer: That she was present at the time the jury returned its verdict and that a true transcript of the proceedings connected therewith is attached to her affidavit. It will be noticed that she does not say that a *full* transcript is attached, but that what is attached is *true*.

Ryan v. State.

The transcript to which she refers shows that the court proceeded to call the roll of jurymen, and then she gives a list of eleven names only, with the word "here" following each of such names. Later it appears from her said transcript that the court inquired in these words: "Gentlemen of the jury, is this your verdict?" That the answer was: "It is." The court: "So say you all, gentlemen?" Answer: "Yes, sir."

Counsel for the prisoner then asked for the polling of the jury and there follows an inquiry made of the same eleven men whose names appear as having been called by the court.

It is said, first, that the court should not have called the jury, that this is required to be done by the clerk. This is a mistake. In criminal cases the statute, Rev. Stat. 7314 (Lan. 11069), does not provide that the clerk shall call the jury. But, it is said, that only eleven men were called. This does not affirmatively appear, although it does appear affirmatively that eleven names were called. No objection appears to have been made by anybody that the full number was not called. The transcript of the journal entries shows that on December 26, 1906: "The jury duly empannelled and sworn having heard all of the evidence adduced by the respective parties, the arguments of counsel and the charge of the court, retired to their room in the custody of the court constable, and after due deliberation they do, upon their oath, find, return and say, as follows": Then follows the verdict, and then these words: "Thereupon the court discharges the jury from the further consideration of this case." In the absence of any suggestion made at the time of the calling of the names of the jurors, that but eleven names had been called, and but eleven were especially inquired of by the court, we cannot reach the conclusion that the statement in the transcript of journal entries, that the jury which was empannelled returned their verdict into court and were properly inquired of, is incorrect, and so, we find no error in the action of the court in refusing a new trial on this ground.

Another objection to the record arises on the evidence. The charge it will be remembered was, that the prisoner while acting as a judge at a primary election made a mark opposite certain names, thereby indicating that the parties whose names were thus marked had voted at this election; whereas in truth and in fact they did not so vote. This was said to be established by showing that Ryan had charge of one of the books containing a certified list of electors, and that Secor, who was jointly indicted with him was acting as a clerk in the same booth at the same election, and had charge of another of these certified lists. These books were introduced in evidence, and we think it was shown

clearly that Ryan made the mark opposite the name of several voters who actually voted at the election; that Secor made the mark opposite the name of one voter at least who voted at the election. These marks, which were so established, were used as standards of comparison by an expert witness, who was placed upon the stand, and he assuming the marks, which we have said we think it was clearly established, were made by Ryan as a standard, gave it as his opinion that Ryan made the mark, which is spoken of in the indictment as a "∨" opposite the names of a considerable number who did not vote. It must be conceded that ordinarily a mark made by one with a pen or pencil is much less satisfactory as a standard of comparison than written words. But, an examination of these marks, which are peculiar, tends very strongly to corroborate the opinion expressed by the expert witness. The marks shown to have been made by the prisoner differ materially from that shown to have been made by Secor. The mark made by the latter has an angle at the bottom much more acute than those shown to have been made by Ryan. Not only so but the upstroke on the Secor mark is much longer than on the Ryan mark. The court in its charge to the jury said to them that the marks used as a standard of Ryan's mark must be established beyond a reasonable doubt. We are not surprised that the jury found it was so established. The court said to the jury that the fact that the disputed marks were made by the same man who made those used as the standard must be established beyond a reasonable doubt. We are not surprised that the jury found they were. There was no error in admitting the evidence of the expert, nor is the evidence such as to justify a reversal on the ground that it was not shown by sufficient evidence that the disputed marks were made by him who made the marks established as a standard.

Another complaint made is that there was misconduct on the part of the prosecuting attorney in his closing argument to the jury. It appears that one of the counsel for the prisoner in his argument, used this language, pointing his finger at the prosecuting attorney and speaking of this case:

"Why was it not tried before? Let the prosecutor tell us why the case was not tried. Mr. McMahon did not want to try it; he was forced against his will to try it. Term after term has gone by, yet the prosecutor failed to try it. We challenge you to tell this jury, when you come to argue to them, why you have not tried this case before."

The prosecutor in his argument following the one just quoted from, made on the part of the defendant, said:

"He (Meals) asked, why wasn't this case tried before? You

Ryan v. State.

challenged me and I am going to tell you: Because Mike Ryan absconded from this county when we wanted to try him, last April or last May, and ran away from the police and got out of town. You asked me, and I told you why.''

To this language used by the prosecuting attorney the prisoner's counsel objected at the time. There was no misconduct on the part of the prosecuting attorney in making this answer to the challenge made to him by counsel for the prisoner. Indeed, it would have been an extraordinary thing if he had allowed to go unanswered the statement that it was because he did not want to try the prisoner, that he had not been tried, if the fact was as the prosecuting attorney stated it to be. Other language used by the prosecuting attorney is complained of, but was not such as to constitute misconduct. Many other complaints are made by the prisoner of the record in this case. All of them have been examined, but we do not feel that it would be profitable to enter into a discussion of any more of them. We find no error in any part of the record, and the judgment of the court of common pleas is affirmed.

**Winch** and **Henry, JJ.**, concur.